IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>MICHAEL F. ANTONELLI and NOREEN A. ANTONELLI,<br><br>    Debtors. | Case No. 17-64177-PMB<br>Chapter 7 |
| NEIL C. GORDON, Chapter 7 Trustee for the Estates of Michael F. Antonelli and Noreen A. Antonelli,<br><br>    Movant,<br><br>v.<br><br>PNC BANK, N.A. f/k/a RBC CENTURA BANK, WELS FARGO BANK, N.A., CHATHAN PARK COMMUNITY ASSOCIATION, INC., FULTON COUNTY TAX COMMISSIONER, MICHAEL F. ANTONELLI and NOREEN A. ANTONELLI,<br><br>    Respondents. | CONSTESTED MATTER |

**WELLS FARGO BANK, N.A.'S RESPONSE TO TRUSTEE'S MOTION TO SELL**

COMES NOW, Wells Fargo Bank, N.A. ("Wells Fargo"), and files this Response to the Trustee's Motion to Sell [Doc. 45], respectfully showing this Honorable Court as follows:

**INTRODUCTION**

Through the Motion to Sell, the Chapter 7 Trustee is seeking to sell the real property at 3020 Lancaster Square, Roswell, Georgia 30076 (the "Property") at a price that is significantly less than the liens securing the Property. Moreover, he is attempting to do so at the expense of

1

Wells Fargo by manufacturing a bona fide dispute that simply does not exist. This Court should deny the Motion to Sell.

## STATEMENT OF FACTS

The Trustee currently has the Property under contract for $1,100,000.00. [Doc. 45] at ¶ 16. As the Trustee correctly states, the Property is subject to two security deeds, both of which were executed on June 30, 2006. *See id.* at ¶ 12. One deed conveyed the Property to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Sunshine Mortgage Corporation, and secured a debt in the amount of $1,492,500.00 (the "Sunshine Security Deed"). The Sunshine Security Deed was recorded on September 22, 2006, in Deed Book 43515, Page 88, Fulton County, Georgia records. A true and correct copy of the Sunshine Security Deed is attached hereto as **Exhibit "A"**. This security deed was later assigned from MERS to HSBC Bank USA, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006 AR15 (the "Assignment"). A true and correct copy of the recorded Assignment is attached hereto as **Exhibit "B"**. Wells Fargo is the current servicer of the Sunshine Security Deed.

The second deed conveyed the Property to RBC Centura Bank to secure a debt in the amount of $199,000.00 (the "RBC Security Deed"). The RBC Security Deed was recorded on August 22, 2006, in Deed Book 43293, Page 129, Fulton County, Georgia records. A true and correct copy of the RBC Security Deed is attached hereto as **Exhibit "C"**. Although recorded prior to the Sunshine Security Deed, Exhibit "A" of the RBC Security Deed states, in all capital letters:

> THIS LOAN IS SUBJECT AND SUBORDINATE TO SECURITY DEED DATES JUNE 30, 2006 TO MER [*sic*] AS NOMINEE FOR SUNSHINE MORTGAGE CORPORATION IN THE PRINCIPAL AMOUNT OF $1,492,500.00.

2

BORROWER SHALL PERFORM ALL OF BORROWER'S OBLIGATIONS UNDER SAID SECURITY DEED MORTGAGE, DEED OF TRUST, OR OTHER SECURITY AGREEMENT WITH A LIEN WHICH HAS PRIORITY OVER THIS DEED.

Despite this clear and unequivocal language placing all parties on notice of the Sunshine Security Deed, the Trustee argues that he can sell the Property free and clear of the Sunshine Security Deed because it "was not attested by an official witness as required by O.C.G.A. §§ 44-14-33 and 44-14-61, and this defect in attestation is apparent from the face of the Wells Fargo Security Deed." [Doc. 45] at ¶ 13.

In addition to seeking to manufacture a bona fide dispute with Wells Fargo, the Trustee is also seeking to surcharge either PNC or Wells Fargo (whoever is in first position) the astronomical amount of $110,000.00 under 11 U.S.C. § 506(c) without establishing that this amount is appropriate. *See* [Doc. 45] at ¶ 31. This amount further eats into the reduced payoff that the Trustee is attempting to force upon Wells Fargo. The Motion to Sell should be denied in its entirety.

## ARGUMENT AND CITATION OF AUTHORITY

### A.    THERE IS NO BONA FIDE DISPUTE WITH WELLS FARGO

Under 11 U.S.C. § 363(f), a trustee may sell property for less than the amount of the liens only if, *inter alia*, the lienholder consents or "such interest is in a bona fide dispute." Here, the Trustee is attempting to establish a bona fide dispute because the sale price of $1,100,000.00 is not sufficient to satisfy the liens on the Property.

> The term "bona fide dispute" is not defined in 11 U.S.C. § 363(f)(4). However, many courts, including the Seventh Circuit Court of Appeals, have stated that courts must determine "whether there is an objective basis for either a factual or legal dispute as to the validity of the debt." *In re Busick,* 831 F.2d 745, 750 (7th Cir.1987); *In re Octagon Roofing,* 123 B.R. 583, 590 (Bankr.N.D.Ill.1991). Clearly this standard does not require the court to resolve the underlying dispute,

3

> just to determine its existence. *Id.* Courts utilizing this definition have held the parties to an evidentiary standard and evidence must be provided to show factual grounds that there is an "objective basis" for the dispute. *Id.*
>
> Moreover, courts have recognized that to qualify as a "bona fide dispute" under § 363(f)(4), the propriety of the lien does not have to be the subject of an immediate or concurrent adversary proceeding. *See* \*628 *In re Collins,* 180 B.R. 447, 452, n. 8 (Bankr.E.D.Va.1995) (citing *In re Oneida Lake Dev., Inc.,* 114 B.R. 352, 358 (Bankr.N.D.N.Y.1990) (stating that § 363(f)(4) is satisfied even though the debtor has not filed an adversary proceeding seeking to avoid the creditor's lien)); *In re Bedford Square Assoc., L.P.,* 247 B.R. 140, 145 (Bankr.E.D.Pa.2000) (stating that although the debtor has not commenced a § 544(a)(3) action, the fact that in all probability it could do so successfully is sufficient to establish that a "bona fide dispute" for purposes of § 363(f)(4) exists) (citing *In re Collins,* 180 B.R. at 452, n. 7; *In re Octagon Roofing,* 123 B.R. at 590–592; *In re Oneida Lake Dev., Inc.,* 114 B.R. at 357–58; and *In re Millerburg,* 61 B.R. 125, 127–128 (Bankr.E.D.N.C.1986)).

*In re Gaylord Grain L.L.C.*, 306 B.R. 624, 627–28 (B.A.P. 8th Cir. 2004).

Here, there is simply not an objective basis for finding that a bona fide dispute exists for two reasons. First, the language in the RBC Security Deed places all parties on notice of the Sunshine Security Deed. Second, the Closing Attorney's Affidavit on the last page of the Sunshine Security Deed cured any attestation defect.

### 1. *The Trustee is on constructive notice of the Sunshine Security Deed*

"A bankruptcy trustee cannot avoid an unrecorded interest in real estate if the unrecorded interest is nevertheless effective under state law principles of constructive or inquiry notice." *In re Municipal Corrections, LLC*, 501 B.R. 119, 132 (Bankr. N.D. Ga. 2013). "Under Georgia law, a purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title." *Id.* (internal quotations and citations omitted). "When a deed is recorded, the recordation is not only constructive notice of the recorded deed, but is also notice of all other deeds referenced by the recorded deed and their contents." *Id.* (citation omitted). Additionally, "the concept of inquiry notice imputes knowledge of an earlier interest to a later

4

purchaser of an interest in land whenever there is any circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry." *Id.* (internal quotations and citations omitted).

Because the RBC Security Deed affirmatively references the Sunshine Security Deed in great detail, the Trustee and all other third parties were on constructive notice of its existence. At the very least, a purchaser would be placed on inquiry notice by this language. In fact, under very similar facts, the Middle District of Georgia held that a security deed was unavoidable. *See Matter of Updike*, 93 B.R. 795, 797-98 (Bankr. M.D. Ga. 1988) (holding that reference in later security deed to improperly attested deed provided constructive notice of improperly attested deed). As such, no objective basis for a bona fide dispute exists and the Motion to Sell must be denied, as Wells Fargo does not consent to the sale.

### 2. The Closing Attorney's Affidavit cured any attestation defect

In addition to the explicit language in the RBC Security Deed that places all parties on notice of the Sunshine Security Deed, there is also no bona fide dispute because the defect in the execution of the Sunshine Security Deed was cured by the Closing Attorney's Affidavit on the last page of the deed. Under O.C.G.A. § 44-2-18,

> If a deed is neither attested by nor acknowledged before one of the officers named in Code Section 44–2–15, it may be recorded upon the affidavit of a subscribing witness, which affidavit shall be made before any one of the officers named in Code Section 44–2–15 and *shall testify to the execution of the deed and its attestation* according to law. A *substantial compliance* with the requirements of this Code section shall be held sufficient in the absence of all suspicion of fraud.

Here, the Closing Attorney's Affidavit on the last page of the Sunshine Security Deed contains the *exact same* language as that before the Eleventh Circuit in *In re Kim*, 571 F.3d 1342 (11th Cir. 2009) – another avoidance case that was on appeal from this Court. That language is:

5

> In closing the above loan, but prior to the execution of the Security Deed and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights.... After said review with and explanation to Borrower(s), *Borrower(s) executed the Security Deed and "Waiver of Borrower's Rights"*.

*Id.* at 1345-46 (emphasis in original); *see also* Exhibit "A" hereto.

In *Kim*, the Eleventh Circuit held that the Closing Attorney's Affidavit "[a]t a minimum . . . substantially complies with the requirements of § 44-2-18." *Id.* at 1346. As such, the security deed was not avoidable. Because the Sunshine Security Deed has the same language upheld by the Eleventh Circuit, there is no bona fide dispute and all parties are on notice of the Sunshine Security Deed. The Motion to Sell should be denied.

**B.    THE SURCHARGE IS UNREASONABLE AND SHOULD BE DISALLOWED**

If this Court was to allow the sale, it should not permit the surcharge in the amount requested by the Trustee. In the Motion to Sell, he requests to surcharge the Property in the amount of $110,000.00 "for the reasonable, necessary costs of preserving, or disposing of the Property, including real estate commission and costs of sale plus the amounts set forth in paragraphs 32-34 below, to the extent of any benefit to the holders of such secured claims under 11 U.S.C. § 506(c)." [Doc. 45] at ¶ 31. Under 11 U.S.C. § 506(c),

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

"Section 506(c) permits a claimant to recover expenses from the secured collateral only under sharply limited circumstances." *In re Towne, Inc.*, 536 F. App'x 265, 268 (3d Cir. 2013) (citation omitted). "To recover expenses under § 506(c), a claimant must demonstrate that (1) the

6

expenditures are reasonable and necessary to the preservation or disposal of the property and (2) the expenditures provide a *direct* benefit to the secured creditors." *Id.* (quoting *In re C.S. Assocs.*, 29 F.3d 903, 906 (3d Cir. 1994)); *see also Matter of SpecialCare, Inc.*, 209 B.R. 13, 19 (Bankr. N.D. Ga. 1997). "A party seeking a surcharge faces an *onerous* burden of proof . . . ." *In re Debbie Reynolds Hotel & Casino, Inc.*, 255 F.3d 1061, 1068 (9th Cir. 2001) (emphasis added). "The benefit to the secured creditor must be 'concrete' and 'quantifiable.'" *In re Bryan*, 857 F.3d 1078, 1093 (10th Cir. 2017).

Here, assuming *arguendo* that the surcharge would be against the proceeds due to Wells Fargo, the Trustee has failed in his burden for three reasons.

*First*, he is attempting to use the surcharge to pay for real estate commission and costs of the sale, but he is already paying those items out of the sale proceeds. *See* [Doc. 45] at ¶ 27. "[T]he trustee may not now seek to surcharge [the secured creditor] for those costs: that would be 'double dipping.'" *In re Jack Kline Co., Inc.*, 440 B.R. 712, 754 (Bankr. S.D. Tex. 2010).

*Second*, even if the Trustee simply made a mistake and intends to use the surcharge, and not sale proceeds, to satisfy the costs of the sale, he has only identified $66,000.00 of the surcharge as being for commissions. The remaining $44,000.00 is unaccounted for, except for potentially paying "*up to* $10,000.00 in Purchasers' closing costs" and prorated taxes in an amount less than $11,714.85. *See* [Doc. 45] at ¶ 27 (emphasis added). The Trustee cannot simply make up a number out of thin air – he has an "onerous burden" to prove that specific costs were "reasonable and necessary to the preservation or disposal of the property." He has not done so, and his request for a $110,000.00 surcharge must be rejected.

*Third*, the Trustee has not identified any direct benefit to Wells Fargo of having its collateral sold for well under the debt owed to it.[1] "[U]nder section 506(c), in order to quantify the direct benefit conferred upon the creditors, the trial court must compare the costs that the creditor would have incurred if forced to foreclose, with the costs incurred by the trustee in maintaining and disposing of the property." *New York Nat'l Bank v. First Fidelity Bank (In re Finkelstein)*, No. 91-3710 (CSF), 1991 WL 208813, at *4 (D.N.J. Oct. 8, 1991) (citation omitted). "Such a comparison will yield the best measure of 'benefit' under the section." *Id.* The Trustee bears the burden of proof on this issue. *Id.* The Trustee has not even attempted to meet this burden, and if he attempted to do so, would likely find that Wells Fargo's foreclosure expenses to be far under $110,000.00. Because there is no direct benefit to Wells Fargo, the surcharge request should be denied.

## CONCLUSION

Based on the foregoing, Wells Fargo respectfully requests that this Court deny the Motion to Sell. In the alternative, if the Motion to Sell is granted, the surcharge request should be denied.

Respectfully submitted, this 26th day of July, 2018.

> */s/ Bret J. Chaness*
> BRET J. CHANESS (GA Bar No. 720572)
> **RUBIN LUBLIN, LLC**
> 3145 Avalon Ridge Place, Suite 100
> Peachtree Corners, GA 30071
> (678) 281-2730 (Telephone)
> (404) 921-9016 (Facsimile)
> bchaness@rubinlublin.com
>
> *Attorney for Wells Fargo Bank, N.A.*

---

[1] The debt is scheduled in the petition as $1,447,725.00. *See* [Doc. 1] at p. 41.

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this 26th day of July, 2018, filed the within and foregoing by

CM/ECF, which will serve notice on all necessary parties.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)