UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| MICHAEL F. ANTONELLI and | ) | CASE NO. 17-64177-PMB |
| NOREEN A. ANTONELLI, | ) | |
| | ) | |
| Debtors. | ) | |
| --------------------------------- | ) | --------------------------------- |
| | ) | |
| NEIL C. GORDON, Chapter 7 Trustee for | ) | |
| the Estates of Michael F. Antonelli and | ) | |
| Noreen A. Antonelli, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| PNC BANK, N.A. f/k/a | ) | |
| RBC CENTURA BANK, | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| CHATHAM PARK COMMUNITY | ) | |
| ASSOCIATION, INC., | ) | |
| FULTON COUNTY TAX COMMISSIONER, | ) | |
| MICHAEL F. ANTONELLI and | ) | |
| NOREEN A. ANTONELLI, | ) | |
| | ) | |
| Respondents. | ) | |

**REPLY TO WELLS FARGO BANK, N.A.'S SUPPLEMENTAL
RESPONSE TO TRUSTEE'S MOTION TO SELL**

COMES NOW Neil C. Gordon, as Chapter 7 Trustee for the bankruptcy estates of

Michael F. Antonelli and Noreen A. Antonelli ("**Trustee**"), by and through undersigned

counsel, and files this *Reply to Wells Fargo Bank, N.A.'s Supplemental Response to Trustee's*

12496290v1

*Motion to Sell* (the "**Reply**"). In support of the Reply, Trustee respectfully shows the Court as follows:

### General Background

1. On July 3, 2018, Trustee filed *Trustee's Motion for (I) Authority to (A) Sell Property of the Bankruptcy Estate Free and Clear of Liens, Interests, and Encumbrances and (B) Disburse Certain Proceeds at Closing, and (II) Approval of Surcharge Under 11 U.S.C. Section 506(c)* [Doc. No. 45] (the "**Sale Motion**").[1]

2. The Sale Motion came on for hearing before the Bankruptcy Court on July 30, 2018 (the "**Hearing**").

3. At the Hearing, the Court asked Trustee to supplement the Sale Motion with legal authority regarding arguments related to 11 U.S.C. § 363(f)(5).

4. On July 31, 2018, Trustee filed his supplement [Doc. No. 51], and later that day, Wells Fargo Bank, N.A. ("**Wells Fargo**") filed a supplemental response to Trustee's Sale Motion [Doc. No. 52] (the "**Wells Supplement**").

5. Among other arguments set forth in the Wells Supplement, Wells Fargo asserts that the "RBC Security Deed[2] is not in first position" based on a labored argument that a statement in a legal description attached as Exhibit "A" to a *Closing Attorney's Affidavit* resulted in a subordination agreement between the predecessors of

---

1   Capitalized terms not defined in this Reply shall have the meanings ascribed to them in the Sale Motion.

2   In his Sale Motion, Trustee referenced the RBC Security Deed as the PNC Deed. Hereafter, Trustee refers to this security deed as either the RBC Security Deed or the PNC Deed.

12496290v1

Wells Fargo and PNC Bank, N.A. ("**PNC**"). [Doc. No. 52 at pages 2-3 of 5]. Wells Fargo also argues, as to a sale free and clear under Section 363(f)(5), that the "majority of courts to analyze [Section 363(f)(5)] have held that this section is limited in scope 'to those scenarios where the trustee or debtor, not any third party, is the actor.'" [Doc. No. 52 at page 3 of 5] (quoting *Dishi & Sons v. Bay Condos, LLC*, 510 B.R. 696, 711 (S.D.N.Y. 2014)).

6.   As Trustee argued at the Hearing and in his supplement, and as set forth herein, Wells Fargo has missed the mark on both points.

## Argument

### *a. Based on the Current Record there is no Subordination Agreement*

7.   As to the alleged subordination agreement, contrary to Wells Fargo's assertion, there is no subordination agreement between Wells Fargo and PNC currently in the record. First, the language on which Wells Fargo relies is not in the RBC Security Deed, but instead it is in a *Closing Attorney's Affidavit*, which was "recorded" subsequent to the RBC Security Deed.[3] In fact, when taking into account the actual RBC Security Deed, which is specifically defined in that deed's definitions section, the RBC Security Deed includes no reference whatsoever to any subordination to the Wells Fargo Deed. Moreover, the Wells Fargo Deed makes no such reference. Thus, the case

---

[3] At the Hearing, Trustee argued that, in his role as a hypothetical bona fide purchaser, he has no notice of this *Closing Attorney's Affidavit* because it does not include a caption that satisfies the strict requirements of O.C.G.A. § 44-2-20(c). *See, e.g., Dollar, et al. v. Thompson*, 96 S.E.2d 493, 212 Ga. 831 (Ga. 1957); *Hopkins v. Virginia Highland Assoc.*, 541 S.E.2d 386, 247 Ga. App. 243 (Ga. App. 2000); *Bowman, et al. v. Century Funding, LTD., et al.*, 627 S.E.2d 73, 277 Ga. App. 540 (Ga. Ct. App. 2006).

on which Wells Fargo primarily relies in this regard, *Mitchell v. West End Park Co.*, 156 S.E. 888, 891 (Ga. 1930), is inapposite because the quote from that case necessarily relates to "facts apparent in the mortgages" and not some extraneous real property description attached to a *Closing Attorney's Affidavit*.[4]

8. Second, how the language "THIS LOAN IS SUBJECT AND SUBORDINATE TO SECURITY DEED DATED JUNE 30, 2006 TO MER [sic] AS NOMINEE FOR SUNSHINE MORTGAGE CORPORATION IN THE PRINCIPAL AMOUNT OF $1,492,500.00" in an unsigned Exhibit "A" to a *Closing Attorney's Affidavit* could lead to an agreement between the predecessors of Wells Fargo and PNC is puzzling. In fact, the plain meaning of this statement makes no sense because "loans" are not subordinate to security deeds. Instead, security deeds or other documents representing lien interests are typically the subject of such agreements.

9. What is more, subordination agreements are subject to the rules of contract, generally, including a requirement that there be consideration between the parties. *See Pindar's Georgia Real Estate Law and Procedure* §§23:39 and 21:47 (Daniel F. Hinkle, ed., 7th Edition). Not only is the subject language indefinite, ambiguous, and unclear,[5] but also there is no indication, whatsoever, that the predecessors to PNC and

---

4    The pin cite on which Wells Fargo relies cites to an 1884 Supreme Court of Georgia opinion in which the face of the documents made clear that a particular mortgage was to be preferred over others even though it was not recorded first. *Coleman & Company v. Carhart, et al.*, 74 Ga. 392 (1884).

5    *See, e.g., Savannah Bag Co. v. Citizens' Bank & Trust Co.*, 40 Ga. App. 149 (Ga. Ct. App. 1929) (holding that a contract to make loans was unenforceable because the terms of the agreement were too "indefinite and uncertain"); *Scarborough v. Novak*, 92 Ga. App.

12496290v1

Wells Fargo actually agreed to it, that this alleged agreement was supported by consideration, or from whom MER [sic] actually received its purported security interest (i.e., what security deed is being referenced).

10. Indeed, Wells Fargo's attorney announced at the Hearing that Wells Fargo has no actual subordination agreement and that Wells Fargo relies solely on this ambiguous language (in an unsigned exhibit to a *Closing Attorney's Affidavit*) to support its position that it is in first position, despite Georgia's first in time, first in right principle of law.[6]

11. Trustee urges the Court to decline to follow such an argument.

### b. Junior Security Interests May Be Divested through Georgia's Foreclosure Laws under 11 U.S.C. § 363(f)(5)

12. As to Wells Fargo's second argument (that a foreclosure sale is not the type of equitable proceeding that satisfies Section 363(f)(5)), Wells Fargo is, again, wrong.

13. In support of its contention, Wells Fargo primarily relies on the opinion *Dishi & Sons v. Bay Condos, LLC*, 510 B.R. 696 (S.D.N.Y. 2014). [Doc. No. 52 at page 3 of 5]. However, contrary to Wells Fargo's position, this case does not at all stand for the proposition that the majority of courts follow its lead. Instead, the court in that case identifies the fact that there is both a broad and a narrow interpretation of Section

---

488 (Ga. Ct. App. 1955) (finding that a "contract for the sale of real estate which is conditioned upon the buyer procuring a loan, the terms of which are not specified, is too indefinite to be enforceable.").

6   Ga. Code Ann. § 44-14-323 (2017).

363(f)(5) and more particularly the language "could be compelled." *Dishi & Sons*, 510 B.R. 710-711. It concludes that the better of these views is the narrow interpretation because the broad interpretation of "could be compelled" allegedly makes subparagraphs "(1) through (4) . . . superfluous." *Id.* at 710.

14. Such an interpretation necessarily changes the actual language of that section to include an active rather than passive voice and also to include the trustee as the actor. However, the Supreme Court of the United States has made clear that the Bankruptcy Code and its subparts should be interpreted as they are written. *See Law v. Siegel*, 134 S. Ct. 1188 (2014).

15. Doing this here makes it clear that the Court can look to applicable Georgia law, including foreclosure laws or other equitable proceedings, to determine whether junior security interest holders (including Wells Fargo if PNC is in first) in the Property could be compelled to accept a money satisfaction of its interest. *See, e.g., In re Jolan, Inc.*, 403 B.R. 866 (Bankr. W.D. Wash. 2009); *In re Boston Generating, LLC, et al.*, 440 B.R. 302 (Bankr. S.D. N.Y. 2010); *In re Wrangell Seafoods, Inc.*, Case No. K09-00012-DMD, slip op. at 2-3 (Bankr. D. Alaska March 9, 2009).

[INTENTIONALLY LEFT BLANK]

WHEREFORE, Trustee respectfully requests that the Court enter an Order:

(a) Granting the Sale Motion, as supplemented; and

(b) Granting Trustee such other and further relief as the Court deems just or appropriate.

Respectfully submitted this 1st day of August, 2018.

        ARNALL GOLDEN GREGORY, LLP
        *Attorneys for Trustee*

        By: */s/ Neil C. Gordon*
           Neil C. Gordon
           Georgia Bar No. 302387
           neil.gordon@agg.com
           Michael J. Bargar
           Georgia Bar No. 645709
           michael.bargar@agg.com
        171 17th Street, NW, Suite 2100
        Atlanta, Georgia 30363-1031
        Tele: (404) 873-8500 / Fax: (404) 873-8501

12496290v1

## CERTIFICATE SERVICE

   This is to certify that I, Neil C. Gordon, am over the age of 18 and that on this day I have caused to be served a copy of the forgoing *Reply to Wells Fargo Bank, N.A.'s Supplemental Response to Trustee's Motion to Sell* by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery by first class United States Mail or certified mail, as indicated, to the following persons at the addresses stated:

Office of the United States Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

Bret J. Chaness
Rublin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071

   This 1st day of August, 2018.

                       */s/ Neil C. Gordon*
                        Neil C. Gordon
                        Georgia Bar No. 302387

12496290v1