

**IT IS ORDERED as set forth below:**

**Date: August 3, 2018**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: | CASE NUMBER |
| **MICHAEL F. ANTONELLI AND NOREEN A. ANTONELLI,** | **17-64177-PMB** |
| Debtors. | CHAPTER 7 |
| **NEIL C. GORDON, CHAPTER 7 TRUSTEE FOR THE ESTATES OF MICHAEL F. ANTONELLI AND NOREEN A. ANTONELLI,** | |
| Plaintiff, | |
| v. | CONTESTED MATTER |
| **PNC BANK, N.A. F/K/A RBC CENTURA BANK, WELLS FARGO BANK, N.A., CHATHAM PARK COMMUNITY ASSOCIATION, INC., FULTON COUNTY TAX COMMISSIONER, MICHAEL F. ANTONELLI AND NOREEN A. ANTONELLI,** | |
| Respondents. | |

**ORDER (I) GRANTING TRUSTEE'S MOTION
FOR AUTHORITY TO SELL PROPERTY OF THE
BANKRUPTCY ESTATE FREE AND CLEAR OF ALL LIENS,
INTERESTS, AND ENCUMBRANCES AND DISBURSE CERTAIN
PROCEEDS AT CLOSING AND (II) DENYING TRUSTEE'S REQUEST
FOR APPROVAL OF SURCHARGE UNDER 11 U.S.C. SECTION 506(C)**

The above-captioned case comes before the Court on the *Trustee's Motion for (I) Authority to (A) Sell Property of the Bankruptcy Estate Free and Clear of All Liens, Interests, and Encumbrances and (B) Disburse Certain Proceeds at Closing and (II) Approval of Surcharge Under 11 U.S.C. Section 506(c)* (Docket No. 45)(the "Motion") filed by the Plaintiff-Trustee ("Trustee") on July 3, 2018.  In the Motion, the Trustee seeks to sell real property located at 3020 Lancaster Square, Roswell, Georgia 30076 (the "Property") at a proposed sale price of $1,100,000.00 (the "Purchase Price").

*The Security Deeds*

The Property appears to be subject to two (2) security deeds.  One security deed was made on behalf of Michael F. Antonelli and Noreen A. Antonelli (the "Debtors") in favor of RBC Centura Bank, now known as PNC Bank, N.A. ("PNC").  That security deed is dated June 30, 2006, was recorded on August 22, 2006 in Deed Book 43293, Page 129, Fulton County, Georgia real estate records (the "PNC Deed"), and secures a debt in the original principal amount of $199,000.00.

The other security deed was made on behalf of the Debtors in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Sunshine Mortgage Corporation, dated June 30, 2006, was recorded on September 22, 2006 in Deed Book 43515, Page 88, Fulton County, Georgia real estate records (the "Sunshine Deed"), and secures a debt in the original principal

2

amount of $1,492,500.00. The Sunshine Deed was later assigned by MERS to HSBC Bank USA, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006 AR15 (collectively, "Wells Fargo"). The signature page of Sunshine Deed at Deed Book 43515, Page 101 (the "Signature Page") contains the signature of an individual named Casimir S. Regent, III, who signed on behalf of the Debtors as their "attorney in fact." The Signature Page also contains the signature of an unofficial witness. However, the Signature Page lacks the signature of an official witness. Instead, it appears that the closing attorney, James Crocker (the "Closing Attorney"), attempted to sign the Sunshine Deed as a notary public but failed to affix his notarial seal. Also recorded with and incorporated into the Sunshine Deed is a Waiver of Borrower's Rights rider (the "Waiver of Rights Rider") and Closing Attorney's Affidavit (the "Affidavit"). The Waiver of Rights Rider and Affidavit appear on the same page (Deed Book 43515, Page 110). The Waiver of Rights Rider states that the provisions contained therein are "incorporated into and made part of the security deed."[1] The Affidavit includes the Closing Attorney's signature, the signature of a separate notary public, and the notary's seal.

*The Trustee's Motion to Sell Pursuant to 11 U.S.C. §§ 363(b), (f)*

In the Motion, the Trustee claims that the proposed purchasers of the Property (the "Purchasers") are *bona fide* purchasers who were procured through the efforts of the Trustee and the Property's listing agent and are not insiders of the Debtors, the Trustee, or the listing agent.

---

[1] The Waiver of Rights Rider and the Affidavit are both incorporated into the security instrument by specific provisions in the Sunshine Deed itself at Deed Book 43515, Pages 88-89. On Page 88, "Security Instrument" is defined as "this document, which is dated June 30, 2006 together with all Riders to this document." On Page 89, "Riders" is defined as "all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower . . ." Below this language are various boxes indicating different types of riders. The box entitled "Other(s)" is checked and specifically designates "Borrower Waiver/Atty Affd."

3

Moreover, the Trustee asserts that the Purchase Price, being the best and only offer he has received, represents an appropriate sale price for the Property. Finally, the Trustee contends that he and the Purchasers have proceeded in good faith.[2] Consequently, the Trustee claims that both he and the Purchasers are entitled to the protections of 11 U.S.C. § 363(m).[3]

The Trustee contends he can, pursuant to 11 U.S.C. § 363(f), sell the Property free and clear of all liens, claims, and encumbrances, with any liens attaching to the proceeds thereof with the same priority and to the same extent as such liens attached to the Property. Specifically, the Trustee argues that Wells Fargo's interest in the Property is subject to a *bona fide* dispute as contemplated by 11 U.S.C. § 363(f)(4), such that he may sell the Property free and clear of Wells Fargo's lien. More specifically, the Trustee contends that the Sunshine Deed was not properly attested by an official witness as required by O.C.G.A. §§ 44-14-33 and 44-14-61, that such defect is apparent from the face of the Sunshine Deed,[4] and that the alleged defect in the Sunshine Deed renders Wells Fargo's interest in the Property subject to a *bona fide* dispute. Further, the Trustee

---

[2] Wells Fargo did not dispute these contentions at the Hearing.

[3] Section 363(m) provides: "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

[4] In support of this contention, the Trustee cites to, *inter alia*, *U.S. Bank Nat'l Ass'n v. Gordon*, 289 Ga. 12, 709 S.E.2d 258 (Ga. 2011) ("Gordon I") and *Wells Fargo Bank, N.A. v. Gordon*, 292 Ga. 474, 749 S.E.2d 368 (Ga. 2013) ("Gordon II"), in which the Georgia Supreme Court clarified the recordation requirements for security deeds under O.C.G.A. §§ 44-14-33 and -61. In Gordon I, the Court held that "a security deed is 'duly filed, recorded, and indexed' only if the clerk responsible for recording determines, from the face of the document, that it is in the proper form for recording, meaning that it is attested or acknowledged by a proper officer and (in the case of real property) an additional witness." Gordon I, 289 Ga. at 15, 709 S.E.2d 258. In Gordon II, the Court was faced with a security deed that lacked the signature of an unofficial witness but contained a waiver that was signed by an unofficial witness and notarized. Gordon II, 292 Ga. at 474-75, 749 S.E.2d 368. The Court held that attestation of a waiver filed with and referenced in a security deed could not be substituted for proper attestation of the security deed itself. *Id.* at 476.

4

contends that, because the Purchase Price is greater than lien held by PNC, he may also sell the Property free and clear of PNC's lien pursuant to 11 U.S.C. § 363(f)(3).

The Trustee sought in the Motion approval from the Court to surcharge PNC under 11 U.S.C. § 506(c) in the amount of $110,000.00, or ten percent (10%) of the Purchase Price (the "Surcharge Amount"). The Trustee contends he is entitled to the Surcharge Amount because PNC has not participated in this case, either through filing a proof of claim or seeking relief from the automatic stay; nor, the Trustee asserts, has PNC contacted him at any point regarding this case. The Trustee notes that because the PNC Deed was recorded prior to the Sunshine Deed without any subordination agreement appearing of record, the PNC Deed is senior to the Sunshine Deed and thus PNC's interest is subject to surcharge. In the alternative, the Trustee contends that if the Sunshine Deed is proven to be senior to the PNC Deed, he will seek the Surcharge Amount against Wells Fargo.

On July 26, 2018, Wells Fargo filed its *Response to Trustee's Motion to Sell* (Docket No. 50)(the "Response"). In the Response, Wells Fargo challenges the Trustee's assertion in the Motion that its interest is the subject of a *bona fide* dispute under Section 363(f)(4). First, Wells Fargo argues that certain language in the PNC Deed was sufficient to put the Trustee and other third parties on constructive or inquiry notice of the existence of the Sunshine Deed. Second, Wells Fargo argues that no *bona fide* dispute exists as to the validity of its interest in the Property because the alleged defect in the Sunshine Deed was cured by the Affidavit recorded with the Sunshine Deed in accordance with O.C.G.A. § 44-2-18 and *Gordon v. Terrace Mortgage Company* (*In re Kim*), 571 F.3d 1342 (11th Cir. 2009). Wells Fargo also argues in the Response that the Trustee is not entitled to surcharge either PNC or Wells Fargo.

5

As to its first argument, Wells Fargo explains that the PNC Deed, in a document entitled "Exhibit A" that it asserts was recorded as part of the PNC Deed, expressly references the Sunshine Deed. The "Exhibit A" referenced by Wells Fargo is recorded at Deed Book 43293, Page 141 and contains what appears to be a legal description of the Property. Additionally, "Exhibit A" contains the following language:

> THIS LOAN IS SUBJECT AND SUBORDINATE TO SECURITY DEED DATED JUNE 30, TO MER [*sic*] AS NOMINEE FOR SUNSHINE MORTGAGE CORPORATION IN THE PRINCIPAL AMOUNT OF $1,492,500.00.
>
> BORROWER SHALL PERFORM ALL OF BORROWER'S OBLIGATIONS UNDER SAID SECURITY DEED MORTGAGE, DEED OF TRUST OR OTHER SECURITY AGREEMENT WITH A LIEN WHICH HAS PRIORITY OVER THIS DEED.

Pursuant to this language, Wells Fargo argues that the Trustee was on constructive notice of the existence of the Sunshine Deed under Georgia law.[5] Alternatively, Wells Fargo argues that the Trustee would be placed inquiry notice at the very least by this language.[6] Accordingly, Wells Fargo argues that because the Sunshine Deed could not be avoided by the Trustee due to constructive and inquiry notice, no *bona fide* dispute exits under 11 U.S.C. § 363(f)(4) as to the validity of the Sunshine Deed.

---

[5] Wells Fargo cites the following language from *In re Municipal Corrections, LLC*, 501 B.R. 119, 132, 138 (Bankr. N.D. Ga. 2013) to support this proposition:

> "When a deed is recorded, the recordation is not only constructive notice of the recorded deed, but is also notice of all other deeds referenced by the recorded deed and their contents."
>
> "A purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title."

[6] As to inquiry notice, Wells Fargo also cites to language found in *In re Municipal Corrections, LLC*, *supra*, "the concept of inquiry notice imputes knowledge of an earlier interest to a later purchaser of an interest in land whenever there is any circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry." *In re Municipal Corrections, LLC*, 501 B.R. at 132 (internal quotations and citations omitted).

For its second argument, Wells Fargo claims that any defect in attestation of the Sunshine Deed due to the missing official witness signature is cured under O.C.G.A. § 44-2-18 by the Affidavit. Wells Fargo cites to the language of O.C.G.A. § 44-2-18, which provides:

> If a deed is neither attested by nor acknowledged before one of the officers named in Code Section 44-2-15, it may be recorded upon the affidavit of a subscribing witness, which affidavit shall be made before any one of the officers named in Code Section 44-2-15 and shall testify to the execution of the deed and its attestation according to law. A substantial compliance with the requirements of this Code section shall be held sufficient in the absence of all suspicion of fraud.

O.C.G.A. § 44-2-18. Wells Fargo then cites to *Gordon v. Terrace Mortgage Company* (*In re Kim*), *supra*, in which the Eleventh Circuit applied O.C.G.A. § 44-2-18 to a closing attorney's affidavit that, like the Affidavit, was recorded with and incorporated into a security deed that lacked an official witness signature. Wells Fargo argues that the closing attorney's affidavit that was found in *Terrace* to meet the requirements of O.C.G.A. § 44-2-18 contains nearly identical language to the Affidavit recorded with the Sunshine Deed. Accordingly, Wells Fargo contends that the Affidavit satisfies the requirements of the O.C.G.A. § 44-2-18, and thus the Sunshine Deed does not have, under *Terrace*, an actionable attestation defect that renders the Sunshine Deed subject to a *bona fide* dispute under 11 U.S.C. § 363(f)(4).

### *The Hearing*

The Motion was scheduled for a hearing on July 30, 2018 at 2:00 p.m. (the "Hearing").[7] At the Hearing, counsel for the Trustee appeared in support of the Motion, and counsel for Wells Fargo appeared in opposition. No party appeared on behalf of PNC, and no other parties appeared at the Hearing. Both parties renewed their respective arguments at the Hearing. The Trustee,

---

[7] Service of the Motion and notice of the Hearing was, in all respects, adequate and proper, and no further notice of the same is required.

7

however, stated at the Hearing that the issues related to surcharge under 11 U.S.C. § 506(c) did not need to be decided that day, as it was still unclear which party, Wells Fargo or PNC, was the senior lienholder. Accordingly, the Trustee decided not to pursue the requested surcharge at the Hearing.

In addressing the assertions made by Wells Fargo in the Response regarding "Exhibit A" and constructive/inquiry notice, the Trustee argued, *inter alia*, that "Exhibit A" attached to the PNC Deed fails to put him or other third parties on either constructive or inquiry notice under applicable Georgia law. Specifically, the Trustee argued that "Exhibit A" was not part of the PNC Deed itself, but rather is a separate document attached to the Closing Attorney's Affidavit of the PNC Deed (at Deed Book 43293, Page 140). The Trustee also argued that "Exhibit A" was not properly included in the Property's chain of title because it failed to include a caption required by O.C.G.A. § 44-2-20(c). Thus, the Trustee contends that neither he nor other third parties have constructive or inquiry notice of the existence of the Sunshine Deed by virtue of "Exhibit A."

As to Wells Fargo's contention that the direct applicability of *Terrace* to the facts of this case demonstrates that no *bona fide* dispute exist, the Trustee argued that the facts of *Terrace* are distinguishable from the case at bar. The Trustee explained that, unlike in *Terrace*, the Debtors here did not sign the Sunshine Deed themselves, but rather an "attorney in fact," Casimir S. Regent, III, signed on their behalf, such that the reasoning of *Terrace* is not directly applicable to analyzing whether the Sunshine Deed meets the requirements of O.C.G.A. § 44-2-18. Consequently, the Trustee contends that a *bona fide* dispute exists as to the validity of Wells Fargo's interest in the

Property under 11 U.S.C. § 363(f)(4).[8]

At the Hearing, Wells Fargo also expanded upon the arguments it asserted in the Response. First, Wells Fargo reiterated that "Exhibit A" recorded with the PNC Deed provides constructive/inquiry notice to the Trustee. Wells Fargo argued that "Exhibit A" is referenced on the first page of the PNC Deed (Deed Book 43293, Page 129) as "See attached Exhibit A for Legal Description." Moreover, Wells Fargo contended that "Exhibit A" constituted a part of the PNC Deed, such that third parties would be placed on inquiry, if not constructive, notice of the existence of the Sunshine Deed. Alternatively, Wells Fargo argued that even if "Exhibit A" is found not part of the PNC Deed, "Exhibit A" still meets the chain of title requirements under O.C.G.A. § 44-2-20 because the document is an exhibit to the PNC Deed's Closing Attorney Affidavit, which itself satisfies the requirements of O.C.G.A. § 44-2-20, such that the Trustee would still be on constructive or inquiry notice. Because the Trustee had inquiry or constructive notice of the Sunshine Deed by virtue of "Exhibit A" of the PNC Deed, Wells Fargo argues that the Sunshine Deed is valid and enforceable against the Trustee. Accordingly, the validity of Wells Fargo's interest in the Property is not subject to a *bona fide* dispute under Section 363(f)(4).

---

[8] The Trustee also raised the applicability of 11 U.S.C. § 363(f)(5) at the Hearing. Because this argument was not addressed in the Motion, the Court permitted the parties to submit supplemental briefs on this issue. In the Trustee's *Supplement to Trustee's Motion for (I) Authority to (A) Sell Property of the Bankruptcy Estate Free and Clear of All Liens, Interests, and Encumbrances and (B) Disburse Certain Proceeds at Closing and (II) Approval of Surcharge Under 11 U.S.C. § 506(c)* (Docket No. 51)("Trustee's Supplemental Brief"), he asserts that if Wells Fargo is found to have a junior interest to that of PNC, then he may sell the Property free and clear of Wells Fargo's junior interest because applicable state foreclosure proceedings cut off inferior liens on the foreclosed property, such as Wells Fargo's lien. Alternatively, the Trustee also asserts in the Trustee's Supplemental Brief that under Georgia receivership law, he would be able to compel an entity, such as Wells Fargo, to accept money in satisfaction of its interest. Hence, according to the Trustee, 11 U.S.C. § 363(f)(5) could also be satisfied by looking to Georgia receivership law. On August 1, 2018, the Trustee filed his *Reply to Wells Fargo Bank, N.A.'s Supplemental Response to Trustee's Motion to Sell* (Docket No. 54), further addressing these issues. Because the Court finds a *bona fide* dispute under 11 U.S.C. § 363(f)(4), it need not address these issues.

Additionally, Wells Fargo reiterated at the Hearing that the facts regarding the Sunshine Deed fall squarely within the ambit of *Terrace*, as the Affidavit is nearly identical to the closing attorney's affidavit in *Terrace* found by the Eleventh Circuit to satisfy O.C.G.A. § 44-2-18. Accordingly, any defects in the attestation of the Sunshine Deed are cured by the recitations in the Affidavit, such that the Sunshine Deed is valid and enforceable against the Trustee and no *bona fide* dispute exists as to Wells Fargo's interest in the Property.[9]

*A Bona Fide Dispute Exists under 11 U.S.C. § 363(f)(4)*

Upon consideration of the foregoing, and in light of the relevant pleadings and statements made on the record at the Hearing, the Court finds that a *bona fide* dispute exists under 11 U.S.C. § 363(f)(4) with regard to Wells Fargo's interest in the Property.

As noted in the Response, "bona fide dispute" is not defined in 11 U.S.C. § 363(f)(4). *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991). However, cases both nationally and in the Eleventh Circuit have found that "bona fide dispute" requires an "objective basis" for

---

[9] As to the 11 U.S.C. § 363(f)(5) argument raised at the Hearing and in the Trustee's Supplemental Brief, Wells Fargo contends in its *Supplemental Response to Trustee's Motion to Sell* (Docket No. 52) that Section 363(f)(5) does not apply to the facts of this case.  First, Wells Fargo asserts that foreclosure of PNC Deed would not extinguish the Sunshine Deed (as the Trustee contends) because (1) the Sunshine Deed is in first priority position pursuant to the terms of the PNC Deed, and (2) foreclosure is not of the type of legal or equitable proceeding contemplated by 11 U.S.C. § 363(f)(5). Wells Fargo also responds to the Trustee's receivership arguments by first noting that the Trustee has failed to demonstrate the prerequisites for determining whether the appointment of a receiver is authorized under Georgia law.  Second, Wells Fargo asserts that even if the Trustee has attempted meet the elements to appointing a receiver under Georgia law, a receiver cannot be legally appointed absent pending underlying state court litigation. Because the Court finds a *bona fide* dispute under 11 U.S.C. § 363(f)(4), it need not address these issues.

the dispute; this is true in both the context of 11 U.S.C. § 303(b)(1)[10] and 11 U.S.C. § 363(f)(4).[11] The "objective basis" must either factually or legally dispute the validity of the debt. *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 507 (Bankr. N.D. Ala. 2002); *see also, In re Octagon Roofing*, 123 B.R. at 590. The Trustee bears the burden of proof to show that a *bona fide* factual or legal dispute exists. *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. at 507. Although evidence is required to demonstrate the "objective basis" underlying the dispute, "the court is not required to determine the underlying dispute or determine the probable outcome, rather only that a dispute does in fact exist." *Id.*[12]

Here, there exists an objective basis sufficient to find both a factual and legal dispute regarding Wells Fargo's interest in the Property. Specifically, the Trustee has met his burden of demonstrating to the Court that (1) a legal and factual dispute exists as to the validity and enforceability of the Sunshine Deed as it relates to constructive or inquiry notice to the Trustee of the Sunshine Deed by virtue of "Exhibit A"; and (2) both a legal and factual dispute exists as to the validity and enforceability of the Sunshine Deed as it relates to attestation issues under Georgia

---

[10] *See, e.g., In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987) (For § 303 purposes "the bankruptcy court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of the debt"); *In re Smith* 243 B.R. 169, 180 (Bankr. N.D. Ga. 1999) ("This Court adopts the [objective basis] test for determining the existence of a bona fide dispute"); *In re Huggins*, 380 B.R. 75, 82 (Bankr. M.D. Fla. 2007) ("The majority of courts, including this Court, have adopted an objective test for determining whether a bona fide dispute exists"). Footnote 30 in *Huggins* also provides a comprehensive list of cases that establish an objective test for deciding a bona fide dispute. *Id.* at fn. 30.

[11] *See, e.g., In re Gaylord Grain L.L.C.*, 306 B.R. 624, 627 (B.A.P. 8th Cir. 2004) ("[C]ourts must determine whether there is an objective basis for either a factual or legal dispute as to the validity of the debt. . . . Courts utilizing this definition have held the parties to an evidentiary standard and evidence must be provided to show factual grounds that there is an objective basis for the dispute.") (internal citations and quotations omitted); *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 507 (Bankr. N.D. Ala. 2002) ("Courts interpreting § 363(f)(4) have consistently held that for a bona fide dispute to exist the court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of the debt.") (internal quotations omitted); *In re MMH Automotive Group, LLC*, 385 B.R. 347, 370 (Bankr. S.D. Fla. 2008).

[12] Consequently, this Order does not reflect a determination that there is any actual infirmity in the Sunshine Deed; only that a *bona fide* dispute exists regarding it.

11

law and the applicability of *Terrace* to the Sunshine Deed.

On its face, the Sunshine Deed on which Wells Fargo relies as evidence of its interest does not bear attestation by an official witness as required under O.C.G.A. §§ 44-14-33 and 44-14-61. *See also Gordon I, supra; Gordon II, supra*; *Wells Fargo Bank, N.A. v. Gordon (In re Codrington)*, 292 Ga. 474, 749 S.E.2d 368 (2013). Because a notary seal was not affixed to the signature of the purported notary public, the Sunshine Deed suffers from attestation defects under Georgia law.

**1. Constructive or Inquiry Notice**

To provide constructive or inquiry notice of the Sunshine Deed, "Exhibit A" must be within the chain of title of the Property. *See e.g., Municipal Corrections, supra*, 501 B.R. at 132, 140; *In re Updike*, 93 B.R. 795, 797 (Bankr. M.D. Ga. 1988). To be within the chain of title of the Property, under O.C.G.A. § 44-2-20(c), [13] "Exhibit A" must be part of a document that is in recordable form. Here, the parties dispute whether "Exhibit A" is part of such a document based on its location in the Deed Book. Because both the first page of the PNC Deed and the first page of the Closing Attorney's Affidavit refer to an "Exhibit A," it is not clear whether the single "Exhibit A" recorded in connection with the PNC Deed is an exhibit to the former or the latter. Because the parties do not appear to dispute that the PNC Deed is in recordable form, but do dispute whether the Closing Attorney's Affidavit is in recordable form, it may be that if "Exhibit A" is part of the PNC Deed as a whole, as Wells Fargo argues, it is properly within the Property's

---

[13] This subsection provides in part as follows:

> Affidavits referred to in subsection (a) of this Code section shall be filed by the clerk of the superior court of the county where the land is located and shall contain a caption referring to the current owner and to a deed or other recorded instrument in the chain of title of the affected land.

*See* O.C.G.A. § 44-2-20(c).

12

chain of title; but, if "Exhibit A" is part of the Closing Attorney's Affidavit, as the Trustee argues, then it is not part of a document that is in recordable form and thus is not within the Property's chain of title.

In light of the foregoing, the first question to be addressed is whether the Closing Attorney's Affidavit is in recordable form, because if it is, then it does not matter to which document (PNC Deed or Closing Attorney's Affidavit) "Exhibit A" is attached. Citing *Dollar v. Thompson*, 212 Ga. 831 (1957), the Trustee disputes the sufficiency of the caption of the Closing Attorney's Affidavit, asserting that it fails to meet the requirements for recording affidavits as set forth in O.C.G.A. § 44-2-20(c). Upon review of the Closing Attorney's Affidavit, although it names the grantor, the lender, and the date of the PNC Deed, the caption still does not contain a reference to a deed "in the chain of title of the affected land" sufficient for proper recording. *See* O.C.G.A. § 44-2-20(c). As such, it does not appear that the Closing Attorney's Affidavit is in recordable form, and thus if "Exhibit A" is attached to it, it does not provide record notice of the Sunshine Deed.

As a consequence, which document "Exhibit A" is attached to becomes an important factual issue. Unfortunately for Wells Fargo, it is not clear from the scant evidence presented at the Hearing whether "Exhibit A" is part of the PNC Deed as a whole, or is only part of the Closing Attorney's Affidavit. Because of that, a factual issue remains as to which document "Exhibit A" is a part of, and thus whether "Exhibit A" provides legally sufficient constructive or inquiry notice of the Sunshine Deed. Accordingly, the Trustee has provided an "objective basis" to support the existence of a *bona fide* dispute for purposes of 11 U.S.C. § 363(f)(4).

**2. Applicability of *Terrace* to the Sunshine Deed**

In *Terrace*, 571 F.3d 1342, *supra*, the Eleventh Circuit found that a closing attorney's affidavit, with language nearly identical to that of the Affidavit, substantially complied with the requirements of O.C.G.A. § 44-2-18,[14] thereby curing the failure of the security deed to have been attested by an official witness. *Terrace*, 571 F.3d at 1346. In *Terrace,* the closing attorney's affidavit was signed by the closing attorney, notarized by a notary public, and stated, in relevant part, that "[a]fter [reviewing and explaining the waiver of borrower's rights rider], Borrower(s) executed the Security Deed and 'Waiver of Borrower's Rights.'" *Id.* at 1345-46. Additionally, the security deed in *Terrace* was signed by the debtor herself. *Id.* at 1344.

The Court in *Terrace* held that the closing attorney's affidavit, which was incorporated as a whole into the security by the terms of the waiver of borrower's rights that appeared on the same page, testified to both the execution and attestation of the security deed by the debtor. *Id.* at 1346. Specifically, the *Terrace* Court noted that:

> By testifying to the execution of this particular Security Deed, which is part and parcel of the same Security Instrument recorded in the deed book, the closing attorney was in effect testifying that the Security Deed *was executed by [the debtor]* and witnessed by an unofficial witness and the closing attorney (the closing attorney was the notary public on the attestation page). In other words, in the Affidavit, the closing attorney testified to a certain fact, and that fact was the execution of this particular Security Deed with its attestation; that fact, with its attestation detail, was clear and obvious a mere four pages earlier in the deed book recording of the single document comprising, *inter alia*, the Security Deed and the Affidavit.

---

[14] O.C.G.A. § 44-2-18 provides:

> If a deed is neither attested by nor acknowledged before one of the officers named in Code Section 44-2-15, it may be recorded upon the affidavit of a subscribing witness, which affidavit shall be made before any one of the officers named in Code Section 44-2-15 and shall testify to the execution of the deed and its attestation according to law. A substantial compliance with the requirements of this Code section shall be held sufficient in the absence of all suspicion of fraud.

14

*Id*. (emphasis added).

Here, the Affidavit makes a nearly identical recitation as the closing attorney's affidavit in *Terrace*: "[a]fter said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and 'Waiver of Borrower's Rights.'" (Deed Book 43515, Page 110). Similar to *Terrace*, the Affidavit appears on the same page as the Waiver of Rights Rider. Moreover, the Affidavit is also signed by the Closing Attorney and is notarized by a separate notary public.

Despite the similarities between the closing attorney's affidavit in *Terrace* and the Affidavit, there is one significant difference between the *Terrace* security deed and the Sunshine Deed: the Signature Page was not signed by the Debtors themselves. Instead, the Sunshine Deed was signed by Casimir S. Regent, III on behalf of the Debtors as their "attorney in fact." Thus, when the Closing Attorney states in the Affidavit that "Borrower(s) executed the Security Deed. . . ." but the Signature Page demonstrates that the Debtors themselves did not actually sign the Signature Page,[15] it is not clear to whom the Closing Attorney is referring and thus whether the reasoning in *Terrace* is directly applicable. Specifically, it is unclear whether, "[b]y testifying to the execution of this . . . Security Deed . . . the closing attorney was in effect testifying that the Security Deed *was executed by [the debtor]*. . ." sufficient to constitute substantial compliance with O.C.G.A. § 44-2-18 because the Debtors here did not actually sign the Sunshine Deed themselves. *Terrace*, 571 F.3d at 1346. As a result, these facts may be sufficiently distinguishable from the facts in *Terrace* to raise a legitimate dispute as to the applicability of that case to these facts.

---

[15] Neither party has produced any evidence with regard the relationship of Casimir S. Regent, III to the Debtors, nor has any evidence of written authority of Casimir S. Regent, III to sign the Sunshine Deed on the Debtors' behalf been produced to the Court.

Because the *Terrace* Court appeared to rely on the representations in closing attorney's affidavit regarding the *debtor's* execution of the security deed to find that such affidavit substantially complied with the requirements of O.C.G.A. § 44-2-18, and because the Debtors here do not appear to have signed the Sunshine Deed, the applicability of *Terrace* to the facts of this case remains an open question. Thus, there appears to be an objective basis to support the Trustee's assertion of the existence a legal dispute regarding the attestation of the Sunshine Deed. Accordingly, Wells Fargo's interest in the Property is subject to a *bona fide* dispute under 11 U.S.C. § 363(f)(4), such that the Trustee may sell the Property free and clear of Wells Fargo's interest.

For the foregoing reasons, it is hereby

**ORDERED** that the Motion is **GRANTED** to the extent it seeks to sell the Property free and clear of all liens, interests, and encumbrances under 11 U.S.C. § 363(f) (the "Sale"), including those of Wells Fargo and PNC. And it is further

**ORDERED** that the Court finds that the Purchase Price is adequate and that the sale is in good faith in accordance with 11 U.S.C. § 363(m). And it is further

**ORDERED** that the Sale is **AUTHORIZED** to be consummated immediately as permitted by Federal Rule of Bankruptcy Procedure 6004(h). And it is further

**ORDERED** that Trustee is **AUTHORIZED** to disburse at the closing of the Sale the following: (1) all outstanding ad valorem real property taxes assessed against the Property; (2) the bankruptcy estate's pro-rated portion of the 2018 ad valorem real property taxes; (3) real estate commission of six percent (6%) of the Purchase Price in an amount up to $66,000.00; (4) water and sewer liens, to the extent any exist; (5) all other normal and customary costs of sale; and (6)

up to $10,000.00 in the Purchasers' closing costs (collectively, the "Costs of Sale"). And it is further

**ORDERED** that after disbursing the aforementioned Costs of Sale, the Trustee shall hold the remaining net proceeds of the Sale (the "Net Proceeds") pending further order of this Court. And it is further

**ORDERED** that all liens, interests, and encumbrances on the Property shall attach to the Net Proceeds in the order they attached to the Property and subject to the same infirmities, if any. And it is further

**ORDERED** that the Trustee's request for approval of surcharge under 11 U.S.C. § 506(c) is **DENIED** without prejudice.

The Clerk is directed to serve copies of this Order upon the Chapter 7 Trustee, Wells Fargo, counsel for Wells Fargo, the United States Trustee, and all parties served with the Motion.

**[END OF DOCUMENT]**